DIGITAL JUSTICE FOUNDATION
Andrew Grimm
(*pro hac vice* pending)
15287 Pepperwood Drive
Omaha, Nebraska 68154
Phone: (531) 210-2381
Andrew@DigitalJusticeFoundation.org

LAW OFFICE OF NAYEEM N. MOHAMMED
Nayeem N. Mohammed
(Texas Bar No. 24082001)
539 W. Commerce Street, #1899
Dallas, Texas 75208
Phone: (972) 767-9099
Nayeem@NNMPC.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| NATHAN BRINTON, | Case No. 3:24-cv-00656-B |
| Plaintiff, | **FIRST-AMENDED COMPLAINT** |
| v. | *(Jury Trial Requested)* |
| ONE TECHNOLOGIES, LLC, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

NATURE OF THE CASE ................................................................................ 3

PARTIES TO THE ACTION ......................................................................... 5

JURISDICTION & VENUE ........................................................................... 6

FACTUAL ALLEGATIONS .......................................................................... 7

I.    VIOLATIONS OF THE WASHINGTON COMMERCIAL ELECTRONIC MAIL ACT ("CEMA") ....... 7

    A.    Unfair and Deceptive Practices .......................................... 7

        i.    Transmission of Commercial Emails ......................... 7

        ii.    Misrepresented Origins and Transmission Paths ................ 14

    B.    Occurring in Trade or Commerce ....................................... 15

    C.    Adverse Public-Interest Impact ....................................... 16

    D.    Injury to Business or Property ........................................ 16

    E.    Causation of Injury ..................................................... 16

II.    VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT ("CPA") ..................... 18

PRAYER FOR RELIEF ............................................................................... 21

I.    WASHINGTON CEMA VIOLATIONS ............................................................. 21

I.    WASHINGTON CPA VIOLATIONS ............................................................... 21

JURY DEMAND ...................................................................................... 21

CERTIFICATE OF SERVICE ......................................................................... 23

## NATURE OF THE CASE

1.  Washington State's consumer-protection laws are intended to do what they say: protect consumers, *i.e.*, protect the public.  Here, Washington Consumer Protection Act ("CPA") and the Washington Commercial Electronic Mail Act ("CEMA"), protect the public from a deluge of false and deceptive commercial emails and from deceptive spam and phishing activities that would otherwise be taken in much greater measure by unscrupulous and opportunistic actors.  In conjunction with technological strategies to keep deceptive and fraudulent emails from flooding our inboxes, states governments have deployed private-attorney general approaches to help ensure that the Internet—specifically, our inboxes—remain viable and free from abusive and deceptive unwanted communications..

2.  At its best, email allows good businesses to connect with potential interested customers in a cost-effective manner, perhaps even connecting great companies making great products with consumers who would love to buy them.  Sometimes, we really don't know what we want until someone tells us.  But, as the proliferation of email communication has shown, email has also subjected everyday consumers to various abuses by bad actors online.  Some are some prominent (and ongoing and successful) that they've become everyday memes.  The Kenyan prince.  But, some deceptive, fraudulent, misleading spam is more mundane—and every bit as destructive insofar as it clutters inboxes, defrauds consumers through trickery, uses falsified information to get around spam filters, *etc.*

3.  In light of such problematic, the Washington Legislature designed statutes to protect against and address new concerns arising in the Internet age and to "address unwanted commercial e-mails by restricting the types of deceptive spam most likely to not be screened out by filtering systems."  *See Harbers v. Eddie Bauer*, LLC, 415 F. Supp. 3d 999, 1010 (W.D. Wash. 2019).

4.      At its best, emails allow good businesses to connect with potential customers in a cost-effective manner. Yet, absent such protections, the social value of email is severely jeopardized.  Deceptive emails, especially those that obscure origins and who the emails are being sent from, severely undercut the value of email. For the user receiving such emails, it imposes the cost of going through numerous unwanted emails. And, for those emails that deceive and obscure the origin of being, email users are unable to use their email accounts to "screen out" such harmful emails by filtering systems.

5.    Moreover, the rampant use of such deceptive commercial emails also undercuts the publics' faith and trust in emails.  These Washington consumer-protection laws truly do protection the healthy functioning of our communications technology.  An Internet with no consequences for rampant abuse would be an Internet no one would want to use.  If any communications technology became sufficiently flooded with unwanted and deceptive commercial solicitations, consumers would simply stop using them.  That's why it's imperative that the law act as a backstop to the spam filter.  That's why cases like this one, where the Defendants deployed highly deceptive tactics to get sales are so important, especially because the problematic emails at issue here are merely the tip o the iceberg. Ensuring a fair code of conduct  so protecting the publics' faith and trust in such emails, which benefits society, customers, and good businesses properly using email to conduct commerce alike.

6.    For those reasons, Washington State's legislature created important consumer protection laws at issue here. And, for those reasons it is important to hold Defendants liable for the deceptive commercial emails and violations of Washington State Consumer laws here.

## PARTIES TO THE ACTION

7.  *Plaintiff Nathan Brinton*: The plaintiff to this action is Nathan Brinton ("Plaintiff"), a natural person who resides and, for all times pertinent to this action, has resided in Clark County, Washington.  Plaintiff is the victim of having his electronic mail addresses, *i.e.*, his email addresses, flooded with false and deceptive emails, many of which were abusively sent by Defendants to him.  All pertinent emails at issue in this suit were sent to and received by email accounts that he owns, *i.e.*, ones where he is the only or one of the authorized users of the account.

8.  *Defendant One Technologies, LLC*: A defendant to this action is One Technologies, LLC ("OneTech" or "Defendant").  As discovery will likely show, OneTech is a predatory company that generates its revenue through, *inter alia*, using unsolicited mass-email marketing to convince unwitting consumers to pay for services (such as credit reports) that they could have otherwise obtained for free, such as credit reports.  To accomplish this, OneTech contracts with and pays mass-email marketing companies.  OneTech either knows, should know, or is willfully blind to the fact that these mass-email marketing companies use highly deceptive emails to scare or trick consumers into paying for services that are otherwise available for free.

9.  *Defendant John Does*: The other defendants to this action are John Doe persons who act as email-marketing partners, agents, affiliates, *etc.*, with One Technologies and were involved in the transmission of these emails in a precise manner to be discovered upon a reasonable opportunity for discovery.

## JURISDICTION & VENUE

10.    _Subject-Matter Jurisdiction_: This action was removed to federal court by Defendant One Technologies, LLC.  *See* Dkt.1 (notice of removal).  Plaintiff has not invoked the subject-matter jurisdiction of this Court and does not bear the burden of demonstrating federal subject-matter jurisdiction.

11.    _Personal Jurisdiction_: Defendant One Technologies, LLC, has submitted to the *in personam* jurisdiction of this Court over it by waiving any challenge to personal jurisdiction via prior joint stipulation.  *See* Dkt.27 at 3 ("Defendant will not seek to dismiss this action for lack of personal jurisdiction if this action is transferred to the Northern District of Texas[.]").

12.    Plaintiff Brinton and Defendant One Technologies, LLC, have jointly stipulated that this venue is a proper venue in a filing made before transfer of this action.  *See* Dkt.27 at 4 ("Plaintiff and Defendant jointly agree and hereby stipulate that Texas federal court would be more convenient for witnesses because Defendant's witnesses are located there but does not have any located in Washington, and Plaintiff waives any right to assert inconvenience as to this case alone[.]").

## FACTUAL ALLEGATIONS

### I.    VIOLATIONS OF THE WASHINGTON COMMERCIAL ELECTRONIC MAIL ACT ("CEMA")

13.    Defendants have violated the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.*, by virtue of their violations of the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.010, *et seq.*[1]  Specifically, Defendants have sent Plaintiff deceptive emails that both obscure their origins and paths of transmission and contain false or misleading subject lines.

### A.    Unfair and Deceptive Practices

14.    The first element of a Washington CPA claim is the requirement that there be an "unfair or deceptive act or practice[.]"  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.093(1)-(3) ("unfair or deceptive acts or practices").  CEMA establishes that certain acts are unfair or deceptive *per se*.  *See* RCW 19.190.030(1)-(2).  Defendants have engaged in such unlawful acts through their transmission of emails that both contain false or misleading subject lines and that obscure their origins and paths of transmission.

#### i.    *Transmission of Commercial Emails*

15.    Defendants' emails are "commercial electronic mail messages" as defined in the operative statute.  *See* RCW 19.190.010 (defining "Commercial electronic mail message").  The content of the emails itself makes clear that these email messages were sent for the purposes of promoting OneTech's services.  The emails that Mr. Brinton received expressly state

---

[1] CEMA did not create a standalone cause of action for deceptive or fraudulent emails.  *See Wright v. Lyft*, Inc., 189 Wn.2d 718, 728 (2017).  Instead, establishing violations of CEMA establish 4 of the 5 elements of the CPA *per se*.  *Id.* at 728 (permitting plaintiffs to "pursue redress under the CPA" and to use CEMA to establish certain CPA elements).  Accordingly, as shorthand, this Complaint will refer to the "CEMA" claims as though that establish legal violations of the CPA through the violations of CEMA and the CPA claims as though that establish standalone violations of the CPA.

that they are advertisements. One email expressly says: "This an Email Advertisement" [*sic*]. Another of Defendants' email says: "This email is an advertisement." In advertising Defendants' services and products, one email offers a "7-day trial[.]" These commercial emails contain various links, such as "Click here to start." These commercial emails are plainly sent for the purposes of advertising and promoting Defendants' goods and services.

16.    Moreover, the relationship between Defendants also demonstrates that these emails are commercial electronic mail messages. Specifically, One Technologies hires third-party senders specifically chosen for marketing purposes, including the other Defendants, for the purpose of sending emails advertising One Technologies' products and services. The emails that Mr. Brinton received from Defendants were commercial electronic mail messages that were intended for and have purpose of promoting and advertising Defendants' goods and services. The content, the context, the background, and the relationships of Defendants as they pertain to these emails all demonstrate that these are emails sent for the purpose of promoting goods and services, *i.e.*, are commercial electronic mail messages, as defined.

17.    Defendants initiated the transmission of these emails. As discovery will show in more detail, Defendants drafted the emails' content. Defendant chose the email strategy. Defendants chose who—which persons and email addresses—to send these emails to. Defendant sent the emails—undertaking the means and mechanisms through which the emails were sent across cyberspace and deposited into Plaintiff's inboxes.

18.    Defendants also conspired to initiate the emails. After a reasonable opportunity for further investigation or discovery, it is likely to be shown that One Technologies hired co-defendants to send the deceptive emails here. In some instances, One Technologies hires

and pays others to send emails, advertising One Technology products and services. In such instances, One Technologies instructs its marketing companies how to send the materials. For example, One Technologies requires senders to follow One Technologies' "email compliance" policies. One Technologies deploys "email compliance" policies that permit it to exercise significant control over Defendants' sending of advertising emails—emails advertising One Technologies' products and services on One Technologies behalf. Moreover, One Technologies tells senders who not to send emails to. As further discovery will likely show, One Technologies envisioned and created the content and advertising statements and materials contained in these emails and even provides pre-composed advertising statements, messages, and materials that co-Defendants can use to send emails, advertising One Technologies products and services. Ultimately, One Technologies exerts significant control over the sending of these advertising emails. One Technologies controls who senders cannot send emails to. One Technologies' "email compliance" policies and in-fact interactions with other Defendants will reveal the precise contours of the control that One Technologies exerts. Thus, One Technologies participated in the chain of events through which Mr. Brinton received these emails, advertising One Technologies' products and services. As such, One Technologies and co-defendants worked together to bring about the transmission of the emails received by Mr. Brinton here.

19.    Defendants assisted one another in initiating the transmission of the pertinent emails in suit. One Technologies assisted in the initiation of these emails. As reasonable discovery will likely show, One Technologies paid the other Defendants to send the emails that Plaintiff received; that One Technologies exercised control over and assisted in deciding how these emails were sent; that One Technologies exercised control over and assisted in

deciding who these emails were and were not sent to; and that One Technologies composed and originated the content of these emails advertising One Technologies' products and services. OneTechnologies exercised control over and assisted in deciding how these emails were sent. One Technologies requires senders to follow One Technologies' "email compliance" policies. After a reasonable opportunity for further investigation or discovery, examination of these One Technologies' "email compliance" policies will reveal the precise contours of the control that One Technologies exerts over co-Defendants sending advertising emails of One Technologies' products and services on One Technologies behalf. Thus, One Technologies assists in deciding how such emails are sent. Moreover, One Technologies assists in deciding who to send these emails too. For example, One Technologies tells senders who not to send emails to. After a reasonable opportunity for further investigation or discovery, it is likely that One Technologies created the content and advertising statements and materials contained in these emails. As such, One Technologies also assists what to send in these emails. After a reasonable opportunity for further investigation or discovery, it is likely that One Technologies provides pre-composed advertising statements, messages, and materials that co-Defendants can use to send emails, advertising One Technologies products and services. Moreover, One Technologies exerts significant control over the sending of these advertising emails. One Technologies controls who senders cannot send emails to. After a reasonable opportunity for further investigation or discovery, examination of these One Technologies' "email compliance" policies will reveal the precise contours of the control that One Technologies exerts over co-Defendants sending advertising emails of One Technologies' products and services on One Technologies behalf. In short, One Technologies assists in deciding the

who, what, and how of these deceptive emails were initiated. Thus, One Technologies participated in the chain of events through which Mr. Brinton received these emails, advertising One Technologies' products and services. Indeed, One Technologies ordered, originated, and participated in the chain of events through which Mr. Brinton received these emails, advertising One Technologies' products and services. As such, One Technologies and co-defendants worked together to bring about the transmission of the emails received by Mr. Brinton here. One Technologies provided significant assistance or support in formulating, composing, sending, originating, initiating, or transmitting the messages.

20. One Technologies, itself and through its third-party senders, sends numerous advertising emails. After a reasonable opportunity for further investigation or discovery, it is likely that One Technologies has sent millions of such emails, either directly itself or through third-party senders who send such emails on One Technologies behalf and at One Technologies direction. The scale and sophistication of One Technologies operation demonstrates that One Technologies has a familiarity with and understanding of the laws, including the CPA, and regulations governing the sending of such advertising materials. Moreover, One Technologies requires third-party senders to comply with One Technology "email compliance" policies. The existence of such policies and the fact that One Technologies requires third-party senders to comply with these policies demonstrates that One Technologies is aware of legal regulations and laws, such as the CPA and CEMA, governing such conduct. It also demonstrates an awareness that One Technologies itself could be liable where third party senders fail to follow such laws and regulations when sending advertising materials at One Technologies request and direction. After a reasonable opportunity for further investigation or discovery, examination of One

Technologies' "email compliance" policies will likely demonstrate that One Technologies has a knowledge of laws, such as the CPA and CEMA. The existence of such "email compliance" policies and controls over One Technologies' third party senders demonstrates that One Technologies has knowledge of the laws, including the CPA, that govern the acts and practices of sending these emails. And, these policies and controls, exerted by One Technologies over its third party senders demonstrates that One Technologies has knowledge and awareness of the acts and practices by which third party senders send such emails on One Technologies behalf. The control and restrictions that One Technologies imposes over third party senders also demonstrates an awareness and knowledge of the laws, such as the CPA, and legal regulations governing the sending of such materials. The scale and number of advertising emails sent by One Technologies, and the number of CPA complaints and lawsuits that OneTechnologies faces in response to such emails, demonstrates One Technologies awareness and knowledge of the CPA,, as a reasonable opportunity for further investigation or discovery will likely reveal. As such, One Technologies provides assistance to third-party senders, such as co-defendants, and knows about the acts and practices that violate the consumer protection act complained of herein.

21. To the degree that One Technologies does not have such knowledge, that is due to One Technologies efforts to consciously not known. One Technologies, itself and through its third-party senders, sends numerous advertising emails. After a reasonable opportunity for further investigation or discovery, it is likely that One Technologies has sent millions of such emails, either directly itself or through third-party senders who send such emails on One Technologies behalf and at One Technologies direction. The scale and sophistication

of One Technologies operation demonstrates that One Technologies has a familiarity with and understanding of the laws governing the sending of such advertising materials. Moreover, One Technologies requires third-party senders to comply with One Technology "email compliance" policies. The existence of such policies and the fact that One Technologies requires third-party senders to comply with these policies demonstrates that One Technologies is aware of legal regulations and laws, such as the CPA and CEMA, governing such conduct. It also demonstrates an awareness that One Technologies itself could be liable where third party senders fail to follow such laws and regulations when sending advertising materials at One Technologies request and direction.    After a reasonable opportunity for further investigation or discovery, examination of One Technologies' "email compliance" policies will likely demonstrate that One Technologies has a knowledge of laws, such as the CPA and CEMA. The control and restrictions that One Technologies imposes over third party senders also demonstrates an awareness and knowledge of the laws and legal regulations governing the sending of such materials.  One Technologies intended to send its advertising messages to each person who receive it, including Mr. Brinton. Indeed, One Technologies hires third party senders, such as co-defendants, to achieve this very purpose. And, One Technology tells and controls who not to send such messages. One Technologies scale, business sophistication, the way it structures its operations, its relationships with third party vendors hired to send advertising materials of One Technologies' products and services, One Technologies requiring "email compliance" evidences that to the degree that One Technologies does not know of any specific instance of a CPA violation, that is consciously avoiding knowing of the CPA violation. The control and restrictions that One Technologies imposes over third party

senders also demonstrates an awareness and knowledge of the laws, such as the CPA, and legal regulations governing the sending of such materials. The scale and number of advertising emails sent by One Technologies, and the number of CPA complaints and lawsuits that OneTechnologies faces in response to such emails, demonstrates One Technologies awareness and knowledge of the CPA,, as a reasonable opportunity for further investigation or discovery will likely reveal. As such, One Technologies provides assistance, control and oversight of third-party senders, such as co-defendants, and knows about the acts and practices that violate the consumer protection act complained of herein. Yet to the degree it does not know of such acts, despite receiving complaints and despite exerting oversight and control, it is the product of One Technologies efforts to consciously avoid knowing of such violations.

22.     Defendants knew or had reason to know that Plaintiff is a Washington resident.  After all, as reasonable discovery will show, Defendants have access to, purchase, and/or obtain online repositories identifying the geographic location of certain persons and likely use it in targeting their emails against the broad swath of individuals they target with deceptive emails.  Accordingly, Defendants' own information on hand gives indications that Plaintiff is a Washington resident and that, accordingly, Plaintiffs' emails are owned, held, used, and access by a  Washington resident.

        *ii.    Misrepresented Origins and Transmission Paths*

23.     These emails contain falsehoods and deceptions as to both the paths of origins and in the subject lines. These emails falsely claim that they are coming from Mr. Brinton himself, when they are not, by using email addresses in the from line that approximate Mr. Brinton's name in an effort to get around spam filters that would otherwise protect him from this spam by filtering it.  For example, one comes from "Brintonnathan" but then the email is

from shirleyt.cisneros@hotmail.com—creating false associations in the from line. That's a false, deceiving and obscured origin. Such falsehood, deceptions, and obscuring of origins prevent those like Mr. Brinton to effectively screen out such messages through email filtering settings. These emails also falsely claim to be coming from the credit reporting bureaus themselves, when they are plainly not.. That too is false. It is yet another falsehood, deception, and obscuring of the source of origin.

24. Moreover, the subject lines contain falsehoods. One email falsely claims that it is in regards to Mr. Brinton's 2023 Transunion report. Another email's subject line falsely claims to be regarding Mr. Brinton's credit scores from Transunion, Equifax, and Experian. Yet another subject line falsely "Brintonnathan , Your-2O23-Transunion, -Equifax-and-Experian-Credit-Scores".

25. These email contain falsehood, deceptions and obscuring's of the paths of origin and who the emails are coming from. These emails' subject lines also contain falsehoods claiming to be about Mr. Brinton's credit scores and reports.

### B.    Occurring in Trade or Commerce

26. The second element of a Washington CPA claim is the requirement that the unfair or deceptive act or practice have occurred "in trade or commerce[.]" *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.020 ("in the conduct of any trade or commerce"); RCW 19.86.020(2) (defining "Trade" and "commerce"). A violation of CEMA establishes this second element of a CPA insofar as CEMA applies to commercial-advertising emails. *See* RCW 19.190.010(2) (defining ""Commercial electronic mail message"); *see also* RCW 19.190.020, RCW 19.190.030. Defendants' emails were commerce that directly and indirectly affects residents of Washington and is directed at Washington.

27. Insofar as the emails that Plaintiff received were sent in the stream of commerce and received by him on his Washington.

28. Moreover, as reasonable discovery will likely demonstrate, Defendants are not singling out Plaintiff. They are involved in mass-marketing emails to a broad swatch of consumers in the State of Washington.

### C.    Adverse Public-Interest Impact

29. The third element of a Washington CPA claim is the requirement that there the unfair or deceptive practice or act have an adverse "public interest impact[.]"  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.093(1)-(3).  CEMA establishes that violations of its provisions have adverse public-interest impact *per se*.  *See* RCW 19.190.030(3).  Defendants' deceptive and misleading emails have adverse public-interest impact.

### D.    Injury to Business or Property

30. The fourth element of a Washington CPA claim is the requirement that there be "injury to plaintiff in his or her business or property[.]"  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.090 ("who is injured in his or her business or property").  CEMA contains a statutory-damages provision that establishes injury *per se*.  RCW 19.190.040; *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 732 (2017) ("RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law.").  By violating CEMA, Defendants have injured Plaintiff as a matter of law and no other factual showing must be made.

### E.    Causation of Injury

31. The fifth element of a Washington CPA claim is the requirement of "causation"—*i.e.*, the requirement that the injury is caused by the unfair or deceptive practice or act.  *Hangman*

*Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.090 ("actual damages sustained by him or her").    CEMA contains a statutory-damages provision that establishes causation *per se*.  RCW 19.190.040; *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 732 (2017) ("RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law.").  By violating CEMA, Defendants have caused these injuries to Plaintiff as a matter of law and no other factual showing must be made.

**II.     VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT ("CPA")**

1.     The same violations also make out a CPA violation directly, insofar as the email contents are also highly deceptive.

2.     **Element 1: Deceptive or Unfair Practice or Act**

3.     These emails contain falsehoods and deceptions as to the paths of origins, the subject lines, and the content in the bodies of the emails.

4.     These emails falsely claim that they are coming from Mr. Brinton himself, when they are not. That's a false, deceiving and obscured origin. Such falsehood, deceptions, and obscuring of origins prevent those like Mr. Brinton to effectively screen out such messages through email filtering settings. These emails also falsely claim to be coming from the credit reporting bureaus themselves. That too is false. It is yet another falsehood, deception, and obscuring of the source of origin.

5.     Moreover, the subject lines contain falsehoods. One email falsely claims that it is in regards to Mr. Brinton's 2023 Transunion report. Another email's subject line falsely claims to be regarding Mr. Brinton's credit scores from Transunion, Equifax, and Experian. Yet another subject line falsely "Brintonnathan , Your-2O23-Transunion, -Equifax-and-Experian-Credit-Scores".

6.

7.     These emails contain falsehood, deceptions and osbcurings of the paths of origin and who the emails are coming from. These emails' subject lines also contain falsehoods claiming to be about Mr. Brinton's credit scores and reports.

8.

9. Moreover, the contents of the bodies of these emails also contain falsehood and make representations. The bodies of these emails falsely claim to be giving Mr. Brinton his credit reports and his credit scores.

10.

11. **Element 2: Trade in Commerce**

12. Defendants are emailing mass marketing emails to residents of the state of Washington. These deceptive, commercial emails are part of Defendants large scale marketing operations of One Technologies' products and services.

13.

14. **Element 3: Public Interest**

15.

16. Sending these false and deceptive emails has the capacity to defraud people into purchasing products under false pretenses. Moreover, these false and deceptive emails has the capacity to defraud people into purchasing products that they either don't need or could have gotten for free.

17.

18. **Element 4: Injury to property**

19.

20. These unwanted deceptive emails make it more difficult for Mr. Brinton to operate his email system, clutter his inbox with unwanted an deceptive emails, thereby costing Mr. Brinton time he would not otherwise have to spend, and make significantly more difficult if not impossible for Mr. Brinton to use his email systems' screening and filtering systems to filter out such emails.

21.

22. Such deceptive commercial e-mails, especially ones that obscure origin, undermine or prevent the ability of Mr. Brinton to screen out such unwanted, deceptive emails through his email filtering systems.

23.

24. **Element 5: Causation**

25. These harms were directly caused by the deceptive and false emails sent by Defendants.

## PRAYER FOR RELIEF

27. Because Defendants committed unlawful acts, Plaintiff prays for to compensate him for his harms, to make him whole, to deter further unlawful conduct, to reward his advocacy as a private attorney general, to serve the public interest, and to dispense justice. Accordingly, Plaintiff prays to this Honorable Court to order remedies in the following forms, or as Plaintiff may separate request:

## I.    WASHINGTON CEMA VIOLATIONS

28. Injunctive relief.  RCW 19.86.090 ("enjoin further violations" of the CPA).

29. Statutory damages.  RCW 19.190.040 ("five hundred dollars" per unlawful email).

30. Reasonable attorney's fees.  RCW 19.86.090 ("a reasonable attorney's fee").

31. Costs of the suit.  28 U.S.C. § 1920; RCW 19.86.090 ("costs of the suit").

## I.    WASHINGTON CPA VIOLATIONS

32. Injunctive relief.  RCW 19.86.090 ("enjoin further violations").

33. Actual damages.  RCW 19.86.090 ("actual damages sustained").

34. Treble damages.  RCW.86.090 ("three times the actual damages sustained").

35. Reasonable attorney's fees.  RCW 19.86.090 ("a reasonable attorney's fee").

36. Costs of the suit.  28 U.S.C. § 1920; RCW 19.86.090 ("costs of the suit").

## JURY DEMAND

37. Plaintiff hereby demands a trial by jury of all issues so triable.

Date: May 18, 2024                    Respectfully submitted,

**DIGITAL JUSTICE FOUNDATION**
A NONPROFIT, PUBLIC-INTEREST FIRM

By */s/ Andrew Grimm*
     Andrew Grimm (*pro h*ac vice pending)
     DIGITAL JUSTICE FOUNDATION
     15287 Pepperwood Drive
     Omaha, Nebraska 68154
     (531) 210-2381
     Andrew@DigitalJusticeFoundation.org

     Nayeem N. Mohammed
     LAW OFFICE OF NAYEEM N. MOHAMMED
     (Texas Bar No. 24082001)
     539 W. Commerce Street, #1899
     Dallas, Texas 75208
     Phone: (972) 767-9099
     Nayeem@NNMPC.com

     *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served via **electronic filing** via this Court's CM/ECF

system.

DATED: May 18, 2024             Respectfully submitted,

                                           */s/ Andrew Grimm*
                                           Andrew Grimm